IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**PHYLLIS GIARRIZZO,**

       **Plaintiff,**

       vs.                                                            Civ. No. 12-1192  ACT

**CAROLYN W. COLVIN,**
**Acting Commissioner of the**
**Social Security Administration,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Remand or Reverse and Brief in Support ("Motion") of the Plaintiff Phyllis Giarrizzo ("Plaintiff"), filed May 28, 2013.  [Docs. 16 and 17.]  The Commissioner of Social Security ("Defendant") filed a Response on July 17, 2013 [Doc. 19], and Plaintiff filed a Reply on January 13, 2014.  [Doc. 24.]  Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion to remand is not well taken and is **DENIED.**

## I.  PROCEDURAL RECORD

On June 18, 2009, Plaintiff protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401. [Tr. 112-118.]  Plaintiff was insured for benefits through December 31, 2007, and must show that she became disabled on or before that date. [Tr. 11]  Plaintiff alleges a disability beginning June 1,

2007,[1] because of "spinal stenosis and Meniere's Disease." [Tr. 135.] Plaintiff stated that she stopped working due to high blood pressure and back problems. [Id.] Plaintiff's application was initially denied on August 14, 2009, and denied again at the reconsideration level on January 26, 2010. [Tr. 58-61, 67-69.]

The ALJ conducted a hearing on March 29, 2011. [Tr. 23-55.] At the hearing, Plaintiff was represented by attorney Helen Lopez. On August 16, 2011, the ALJ issued an unfavorable decision. In her report, the ALJ found that through the date last insured, the medical evidence establishes that the Plaintiff has the following severe impairments: "degenerative disc disease of the cervical spine; hypertension and vertigo." [Tr. 16.] However, the ALJ concluded that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Id.] The ALJ also found that through the date last insured:

> Claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and that required no reaching or looking over head, or exposure to hazards such as unprotected heights and dangerous machinery.

[Tr. 13.] Finally, the ALJ concluded that Plaintiff has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.

On September 26, 2012, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. [Tr. 1-3.] On November 16, 2012, Plaintiff filed her Complaint for judicial review of the ALJ's decision. [Doc. 1.]

---

[1] Plaintiff's Application for Disability Insurance Benefits indicates an alleged onset date of May 7, 2002; however, at the hearing in this matter Plaintiff's attorney announced that Plaintiff was amending her onset date to June 1, 2007. [Tr. 27, 112.]

Plaintiff was born on December 19, 1954. [Tr. 112.] Plaintiff completed three years of college and has past work experience as a hospital administrator (assistant director) and registered nurse. [Tr. 136.] The claimant has not engaged in substantial gainful activity since her alleged onset date of June 1, 2007, through her date last insured of December 31, 2007. [Tr. 16.]

## II.  STANDARD OF REVIEW

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work in the national economy."  42 U.S.C. § 423(d)(2)(A).  In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520.[2]

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(C).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform.  *See Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001).  Disability benefits are denied if the

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision was supported by substantial evidence; and second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id*. (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The court "may neither reweigh the evidence nor substitute" its opinion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214 (quotation omitted).

### III.  MEDICAL HISTORY

The Administrative Record in this matter contains medical records dating from 1997 through 2009; however, because the Plaintiff must have been disabled before December 31, 2007, the following summary is of records relevant to the issues raised and dating from December 31, 2007, and earlier.

    A.    **Taos Medical Group, P.A.**

On August 13, 2004, Plaintiff presented to Taos Medical Group to establish care with a local physician and was seen by Robert White, M.D. [Tr. 199.] Plaintiff reported a history of hypertension (high blood pressure), hyperlipidemia (high cholesterol), cystic breasts, and chest pain. [Id.] Plaintiff was seen nine (9) times from August 13, 2004, through April 18, 2007. [Tr. 192-199.] Plaintiff's hypertension was initially managed with Toprol, but on September 19, 2004, Dr. White switched Plaintiff's medications to Lotrel and HCTZ (diuretic). [Tr. 199.]

---

Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

Dr. White also recommended nonsystemic medications for Plaintiff's hyperlipidemia because of Plaintiff's difficulty tolerating most systemic medications. [Tr. 196.] On December 21, 2004, Plaintiff underwent a cardiovascular ultrasound because of her hyperlipidemia and possible TIA (transient ischemic attack). [Tr. 237.] The ultrasound indicated that Plaintiff had "[b]ilateral mild intimal thickening. No significant flow limiting lesions in the bilateral extracranial carotid systems." [Tr. 237.] Plaintiff reported chest pain on May 3, 2006, which was relieved with nitroglycerine. [Tr. 197.] Plaintiff reported chest pain again on April 18, 2007, but Dr. White indicated it was "likely chest wall strain from [two episodes of bronchitis]". [Tr. 192.]

### B.     Family Care of Gilbert

On October 31, 1997, Plaintiff presented to David Glass, M.D., of Family Care of Gilbert, with complaints of neck discomfort with tingling down her left arm and left hand. [Tr. 15.] Plaintiff was referred for a cervical spine series, which indicated "[d]egenerative changes of the lower cervical spine." [Tr. 510.] Dr. Glass prescribed Flexeril and Naprosyn for pain management. [Tr. 515.]

On November 11, 1997, Plaintiff saw Dr. Glass for follow up of cervical spine degenerative changes. [Tr. 511.] Dr. Glass referred Plaintiff for physical therapy and to an orthopedist. [Id.]

On December 10, 1997, Plaintiff underwent an MRI of the cervical spine, which indicated as follows:

> C5-6 degenerative disc changes with posterior degenerative spurring resulting in a moderate left C5-6 nerve root canal stenosis with probable impingement on the left C6 nerve root, correlate clinically. No evidence for disc herniation, significant bulge, or central spinal canal stenosis.

[Tr. 509.]

On May 11, 1998, Plaintiff had a complete physical exam with Jeanne Wolfe, M.D., of Family Care of Gilbert who noted that Plaintiff was complaining of pain in the left side of her neck and into her arm. [Tr. 512.] Plaintiff also reported some numbness in her left hand. [Id.] Dr. Wolfe indicated a normal exam except for elevated blood pressure and obvious radiculopathy. [Id.]

On June 3, 1998, Plaintiff followed up with Dr. Wolfe for her neck pain. [Tr. 513.] Dr. Wolfe indicated that Plaintiff had epidural steroid injections, but they would need to discuss future care. [Id.]

On May 28, 1998, Plaintiff was referred by Dr. McCulley to neurosurgeon Dr. F. Cristiansen for a ruptured vertebra. [Tr. 520.]

On November 22, 2000, and November 24, 2000, Plaintiff was seen by Dr. Wolfe complaining of "vertigo type symptoms," low blood pressure, and back pain. [Tr. 553, 554.] Dr. Wolfe adjusted Plaintiff's hypertension medications and prescribed Antivert for Plaintiff's dizziness. [Tr. 553.]

**C.     Case Analysis – David P. Green, M.D.**

On August 11, 2009, nonexamining State agency medical consultant David P. Green, M.D., prepared a Case Analysis based on his review of Plaintiff's medical records. [Tr. 499.] Dr. Green stated as follows:

> The claimant alleges spinal stenosis and Meniere's Disease. MER from the relevant time period shows that the claimant was followed for HTN and hyperlipidemia. She was also seen for hepatic cysts. Problems with cervical DJD, vertigo and hearing problems have only surfaced since the end of 2008. The claimant's condition was non-severe through the DLI. Her current allegations surfaced well after the DLI.

[Tr. 499.]

### D.     Case Analysis – J. Pataki, M.D.

On January 23, 2010, nonexamining State agency medical consultant J. Pataki, M.D., prepared a Case Analysis based on his review of Plaintiff's medical records on reconsideration. [Tr. 504.]  Dr. Pataki stated that "[a]fter reviewing the evidence in file, the 416 of 8/11/2009 by David P. Green, M.D., is affirmed as written."  [Tr. 504.]

## ANALYSIS

Plaintiff asks this Court to address the following issues on review: (1) the ALJ did not address whether the agency met its burden of proof at Step 5 of the sequential analysis; (2) the ALJ failed to include a precise limitation or impairment from the vertigo or dizziness even though she found such to be "severe" impairments; (3) the ALJ failed to mention the treating doctor's opinion of disability; (4) the ALJ erred in finding that Plaintiff could perform sedentary work; (5) the ALJ's finding that the Plaintiff has transferrable work skills is not supported by substantial evidence; and (6) the record is deficient because of the failure to discuss and assign weight to the husband's testimony.  [Doc. 16 at 1.]

### A.     Burden of Proof at Step 5

Plaintiff argues that the ALJ failed to articulate that the burden of proof shifts to the Commissioner at step five, and as such it indicates the ALJ's "lack of appreciation of the shift which, in a close case such as this, could be outcome determinative."  [Doc. 17 at 3.]  Defendant contends that the ALJ expressly noted the step five burden in accordance with 20 C.F.R. § 505.1560(c).  [Doc. 19 at 5.]

The ALJ's statement of the shift in the burden is not fundamentally incorrect.  The Plaintiff bears the burden of proving a disability within the meaning of the Social Security Act throughout the process.  *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991)(citing 42

U.S.C. § 423(d)(5) (1988)).  The burden of presenting evidence shifts to the Commissioner at step five because he must provide evidence demonstrating "that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's] residual functional capacity and vocational factors."  20 C.F.R. § 404.1560(c)(2).  However, the Commissioner will apply the previously determined RFC at step five, and the Commissioner need not present further evidence about the claimant's RFC at this step.  *Id*.  In this case, the ALJ did acknowledge the shift in the burden and that the Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience."  [Tr. 16.]  Thus, this statement of the burden was not legal error necessitating remand.

    B.  <u>**Limitations Resulting From Vertigo**</u>

  Plaintiff argues that the ALJ failed to include a precise limitation or impairment from Plaintiff's vertigo or dizziness in her hypothetical to the Vocational Expert even though she found vertigo to be severe.  [Doc. 17 at 4.]  Defendant contends that the ALJ's hypothetical question to the Vocational Expert properly accounted for Plaintiff's severe vertigo by limiting her to sedentary work that did not require reaching or looking overhead or exposure to hazards such as unprotected heights and dangerous machinery.  [Doc. 19 at 6.]  The Court agrees.

  The rule is well-settled that, where a hypothetical question fails to include "all (and only) those impairments borne out by the evidentiary record," *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995), a VE's testimony in response to it cannot provide substantial evidence to support an ALJ's findings regarding the work a claimant is able to perform.  *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (holding "hypothetical questions in this context must reflect with

precision all of [claimant's] impairments."). Here, the ALJ included Plaintiff's vertigo by limiting her to sedentary work that did not require reaching or looking overhead or exposure to hazards such as unprotected heights and dangerous machinery. This limitation is supported by substantial evidence during the relevant period of time prior to Plaintiff's date last insured of December 31, 2007. The only records prior to December 31, 2007, which mention Plaintiff's vertigo are dated November 22, 2000, and November 24, 2000. Therein, Plaintiff complained of "vertigo type symptoms" for which Dr. Wolfe prescribed Antivert. There is no further mention of dizziness or vertigo in any subsequent records until *after* December 31, 2007.

While Plaintiff and Plaintiff's husband testified that Plaintiff experienced dizziness in 2007 as a side effect from her medications, Plaintiff stated in her Adult Function Report that she was able to spend four hours every day cleaning house, dusting, mopping, doing laundry, and ironing, in addition to caring for her personal needs and preparing meals. [Tr. 155-157.] Plaintiff also indicated that she cares for her grandson when her son is at work. [Tr. 156.] The only limitations expressed by Plaintiff included not being able to clean fans or shampoo the carpet, not being able to do yard work, and not being able to "reach over head" and lift. [Tr. 156-157.]

For these reasons, the Court finds that the ALJ's hypothetical question to the Vocational Expert regarding limitations caused by Plaintiff's vertigo is supported by substantial evidence.

### C.     Failure to Mention Treating Physician

Plaintiff argues that the ALJ failed to mention the opinion of Dr. Lucas Schreiber in which he stated that Plaintiff's neck pain was a chronic debilitating condition that had precluded her from gainful employment. [Doc. 17 at 9.] While Plaintiff acknowledges that Dr. Schreiber's records are dated four years after the date last insured, she asserts they should be considered

nonetheless because his opinion is based on and include Plaintiff's previous medical history from the relevant period. [Id.] Defendant contends that Dr. Schreiber's report does not relate to the relevant time period under consideration in this case, and that determinations of disability are legal conclusions that are "reserved to the Commissioner." The Court agrees. Claimant's insured status expired on December 31, 2007. Thus, to be entitled to disability benefits, she must prove she was totally disabled by this date. *Kepler v. Chater*, 68 F.3d 387, 389 (10th Cir. 1995)(*citing Henrie v. United States Department of Health and Human Services*, 13 F.3d 359, 360 (10th Cir. 1993)). Here, Dr. Schreiber's records are dated in 2011 and fall outside the Plaintiff's date last insured of December 31, 2007. For these reasons, the ALJ did not err in not discussing the opinion of Dr. Lucas Schreiber.

### D.    ALJ's RFC Assessment to Perform Sedentary Work

Plaintiff argues that the ALJ's RFC assessment that Plaintiff can perform sedentary work is not supported by substantial evidence because there is no reference to physical assessment specifically stating Plaintiff's functional capacity. [Doc. 17 at 10.] Defendant contends that substantial evidence supports the ALJ's RFC finding because she considered the record as a whole. [Doc. 19 at 8.] The Court agrees.

In determining a claimant's physical abilities, the ALJ should "first assess the nature and extent of [the claimant's] physical limitations and restrictions and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). The ALJ is required to consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. §§ 404.1545(d) , 416.945; *see also Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "[T]he ALJ must make specific [RFC] findings." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). And those findings "must be supported

by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). The RFC assessment must include a narrative discussion as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual case perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistences or ambiguities in the evidence in the case record were considered and resolved.
> 
> . . .
> 
> The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, at *7.

> Here, the ALJ's analysis meets these standards. The ALJ determined as follows:
>
> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) that requires no reaching or looking over head, or exposure to hazards such as unprotected heights and dangerous machinery.

[Tr. 17.] In making her RFC determination, the ALJ considered all of the claimant's severe impairments, and made specific findings for each that were supported by substantial evidence. The ALJ also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-03p. The ALJ provided a narrative discussion describing how the evidence supports her conclusions, and cited to specific medical facts as well as nonmedical evidence. The ALJ specifically points out that Plaintiff's activities were not restricted in any way during the relevant time period and Plaintiff continued working for a

number of years following the diagnosis of each condition. Here, Plaintiff fails to point to any evidence to the contrary.

For these reasons, the Court finds the ALJ's RFC assessment is supported by substantial evidence.

### E. Transferability of Acquired Skills to Other Jobs

Plaintiff argues that the jobs identified by the Vocational Expert would likely require more computer work than indicated by the Dictionary of Occupational Titles relied on by the Vocational Expert, and as such her testimony does not establish by substantial evidence that Plaintiff could perform the jobs found by the ALJ. [Doc. 17 at 11-12.] Defendant contends that the ALJ can use vocational experts in determining whether an individual's work skill can be used in other work and the specific occupations in which they can be used. The Court agrees.

20 C.F.R. 404.1566(e) states:

(e) Use of vocational experts and other specialists. If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist. We will decide whether to use a vocational expert or other specialist.

Here, the ALJ properly relied on the Vocational Expert to determine whether Plaintiff's work skills could be used in other work. To the extent there was any conflict between the DOT and the VE testimony, an administrative law judge has a duty to investigate and obtain a reasonable explanation before the administrative law judge may rely on that expert testimony as substantial evidence. *Haddock v. Apfel*, 196F.3d 1084, 1087 (10th Cir. 1999). Here, the ALJ specifically questioned the Vocational Expert as follows:

ALJ: Are you aware that your testimony needs to be in accord with the Dictionary of Occupational Titles and its companion publications?

>   VE:   Yes, Your Honor.
>
>   ALJ:   Will you tell me about any variation between your testimony and those publications?
>
>   VE:   Yes, Your Honor.

[Tr. 48.] When Plaintiff's attorney raised the issue that the Vocational Expert was using a 1991 edition of the Dictionary of Occupational Titles and the jobs identified may require more computer work, the ALJ subsequently questioned the VE about this potential conflict. In so doing, the ALJ obtained a reasonable explanation and appropriately relied on the VE's testimony as substantial evidence. [Tr. 53-54.]

For these reasons, the Court finds that the ALJ relied on substantial evidence in finding that Plaintiff had acquired work skills from past relevant work that were transferable to other occupations.

### F.   Assigning Weight to Husband's Testimony

Plaintiff argues that the ALJ made no findings as to credibility in this decision and as such that the testimony of Plaintiff and her husband must be taken as true. [Doc. 17 at 12.] Plaintiff further argues that the ALJ erred because she omitted any mention of Plaintiff's husband's corroborating testimony. [Tr. 17 at 13.] Contrary to Plaintiff's first argument, the ALJ did make findings regarding Plaintiff's credibility. The ALJ specifically stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

[Tr. 17.]

With respect to the ALJ's alleged failure to mention Plaintiff's husband's testimony, in the Tenth Circuit, an ALJ is not required to make specific, written findings regarding each lay witness's opinion when the written decision reflects that the ALJ considered the testimony. *Blea v. Barnhart*, 466 F.3d 903, 914–15 (10th Cir. 2006); *Adams v. Chater*, 93 F.3d 16 712, 715 (10th Cir. 1996). In *Adams*, the court "decline[d] claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony." 93 F.3d at 715. The *Adams* court found "that the ALJ considered the testimony of claimant's wife in making his decision because he specifically referred to it in his written opinion," and the court found no error in the ALJ's failure to make specific, written findings regarding that testimony. *Id.* Thirteen years later, the Tenth Circuit confirmed the rule that an ALJ is not required to make specific written findings regarding third-party testimony so long as the written decision reflects that the ALJ considered that testimony. *Blea*, 466 F.3d at 915.

Here, Plaintiff's husband's testimony was the only nonmedical source opinion in the record. The ALJ's decision demonstrates that she considered Plaintiff's husband's testimony because she specifically stated that she had "considered opinion evidence in accordance with the requirements of . . . *SSR 06-3p*." [Tr. 17.] (Emphasis added.) SSR 06-3p specifically addresses the regulatory requirements for considering evidence from "non-medical sources" that have not seen a claimant in a professional capacity in connection with their impairments, such as a claimant's spouse. SSR 06-3p, WL 2329939, *6. Because Plaintiff's husband's testimony was the only nonmedical source opinion in the record, the ALJ's reference to SSR 06-3p could only be referring to her consideration of his testimony.

## **CONCLUSION**

For the foregoing reasons, this Court finds that Plaintiff's Motion to Remand or Reverse [Doc. 16] is not well taken and is **DENIED**.

_____
**ALAN C. TORGERSON**
**United States Magistrate Judge,**
**Presiding by Consent**